Islet Scis., Inc. v. Brighthaven Ventures, LLC, 2017 NCBC 5.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 16388

ISLET SCIENCES, INC.                     )
          Plaintiff,                     )
                                         )
     v.                                  )
                                         )
BRIGHTHAVEN VENTURES, LLC,               )
JAMES GREEN, WILLIAM WILKISON,           )
OFSINK LLC, and DARREN OFSINK,           )
          Defendants,                    )
                                         )
and                                      )
                                         )
BRIGHTHAVEN VENTURES LLC,                )
          Third-Party Plaintiff,         )
                                         )
     v.                                  )
                                         )
JOHN F. STEEL, IV, EDWARD T.             )
GIBSTEIN, and COVA CAPITAL               )
PARTNERS, LLC,                           )
          Third-Party Defendants.)

OPINION AND ORDER ON
DEFENDANT BRIGHTHAVEN
VENTURES LLC'S MOTION
TO DISMISS

THIS MATTER comes before the Court on Defendant Brighthaven Ventures, LLC's ("BHV") Motion to Dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") ("Motion to Dismiss").

THE COURT, having considered the Motion to Dismiss, the briefs in support of and in opposition to the Motion to Dismiss, the oral arguments of counsel at the hearing, and other appropriate matters of record, concludes that the Motion to Dismiss should be GRANTED, in part, and DENIED, in part, for the reasons set forth below.

*McGuireWoods LLP by Michael F. Easley, Jr, Esq., Irving M. Brenner, Esq., Michael L Simes, Esq., for Plaintiff Islet Sciences, Inc. and for Third-Party Defendants John F. Steel, IV, Edward T. Gibstein and COVA Capital Partners, LLC.*

*Parry Tyndall White by K. Allan Parry, Esq., for Defendants James Green and William Wilkison.*

*Jerry Meek, PLLC by Gerald F. Meek, Esq. for Defendant Brighthaven Ventures, LLC.*

*Young Moore and Henderson, P.A. by Walter E. Brock, Jr., Esq. for Defendants Offsink LLC and Darren Offsink.*

McGuire, Judge.

<u>FACTUAL[1] AND PROCEDURAL BACKGROUND</u>

1.      The factual and procedural background of this matter has been recited by the Court in its Opinion and Order on Green and Wilkison's Motions issued contemporaneously with this Opinion and Order. Here, the Court recites only those limited background and procedural facts necessary to the resolution of the Motion to Dismiss.

2.      Plaintiff Islet Sciences, Inc. ("Islet" or "Plaintiff") is a public corporation organized and existing under the laws of the State of Nevada with its headquarters in Raleigh, North Carolina. Islet is in the business of developing and commercializing new medicines and technologies to treat patients suffering from metabolic disease.

3.      Defendant Brighthaven Ventures, LLC ("BHV") is a privately-owned pharmaceutical research and development company headquartered in Raleigh, North

---

[1] The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those facts included in the Complaint that are relevant to the Court's determination of the Motion. *See, e.g., Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).

Carolina. BHV develops pharmaceutical products to treat obesity-related health complications. Defendants James Green ("Green") and William Wilkison ("Wilkison") own BHV.

4. On or around September 2013, Islet approached Green and Wilkison about joining Islet's management team. On October 25, 2013, Islet's board appointed Green as CEO and Wilkison as COO of Islet.

5. Green and Wilkison remained officers of Islet until they resigned their positions on July 23, 2015. They remained directors of Islet until they were removed on September 24, 2015.

6. On or about February 9, 2014, the parties agreed on the "key terms" of an agreement for Islet to merge with BHV, but the agreement was subsequently terminated in or around March 9, 2015. (Am. Compl. ¶ 27, 61.) Green and Wilkison remained the owners of BHV at all times relevant to the Motion to Dismiss.

7. Plaintiff alleges that during their tenures as officers and directors of Islet, Green and Wilkison breached their respective fiduciary duties to Islet and instead engaged in conduct that directly benefitted themselves and BHV at the expense of Islet.

8. On December 11, 2015, Plaintiff initiated this lawsuit by filing a Complaint.

9. On February 19, 2016, BHV filed its Answer and Counterclaims.

10. On February 19, 2016, BHV also filed a Motion to Dismiss pursuant to Rule 12(b)(6), seeking dismissal of Plaintiff's claims against it.

11. On April 20, 2016, the Court entered an Order granting Plaintiff leave to file its First Amended Complaint. The First Amended Complaint made claims for relief against BHV for: aiding and abetting Green and Wilkison's breaches of fiduciary duties (Second Cause of Action); unjust enrichment (Sixth Cause of Action); and, for the imposition of a constructive trust (Seventh Cause of Action).

12. On May 20, 2016, BHV filed its Answer to the First Amended Complaint.

13. On May 20, 2016, BHV also filed a renewed Motion to Dismiss the claims stated against it in the First Amended Complaint. The Motion to Dismiss was fully briefed, the Court has heard oral arguments, and it is now ripe for disposition.

## DISCUSSION

14. When ruling on a Rule 12(b)(6) motion to dismiss, the Court must determine "whether the complaint, when liberally construed, states a claim upon which relief can be granted on any theory." *Benton v. W. H. Weaver Constr. Co.*, 28 N.C. App. 91, 95, 220 S.E.2d 417, 420 (1975). Such a motion should be granted only: "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). The Court treats the well-pleaded allegations in a complaint as true and admitted in analyzing a Rule 12(b)(6) motion to dismiss. *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). While facts and permissible inferences set forth in the

complaint are analyzed in a light most favorable to the plaintiff, un-warranted conclusions of law or deductions of fact will not be deemed admitted. *Sutton*, 277 N.C. at 98, 176 S.E.2d at 163; *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986). "The general standard for civil pleadings in North Carolina is notice pleading. Pleadings should be construed liberally and are sufficient if they give notice of the events and transactions and allow the adverse party to understand the nature of the claim and to prepare for trial." *Radcliffe v. Avenel Homeowners Ass'n*, 789 S.E.2d 893, 913, 2016 N.C. App. LEXIS 824, *52 (2016) (citation omitted).

A. *Aiding and Abetting Breach of Fiduciary Duty*.

15.  Plaintiff contends that BHV, "through its principals Green and Wilkison," had knowledge of Green and Wilkison's fiduciary duties to Islet and "provided substantial assistance to [ ] Green and Wilkison in breaching those fiduciary duties." (Am. Compl. ¶¶ 97–100.) Plaintiff does not allege specifically how BHV provided such assistance. In its Memorandum in Opposition to BHV's Motion to Dismiss, however, Plaintiff contends that "BHV . . . was the vehicle by which Green and Wilkison accomplished their self-dealing and . . . the primary beneficiary of their wrongful conduct. As the sole owners and officers of BHV, BHV acts and operates through Green and Wilkison." (Pl.'s Mem. Opp. Mot. Dismiss 19.)

16.  As a preliminary matter, the parties dispute whether North Carolina or Nevada law applies to the claim for aiding and abetting breach of fiduciary duty. The answer to this question is critical because North Carolina has not clearly recognized the existence of a cause of action for aiding and abetting breach of fiduciary duty, *see*

*e.g., Corwin v. British Am. Tobacco PLC*, 2016 N.C. App. LEXIS 1320 *42–43 (Dec. 20, 2016) (citing *Bottom v. Bailey*, 238 N.C. App. 202, 211-12, 767 S.E.2d 883, 889 (2014)) ("The validity of an aiding and abetting a breach of fiduciary duty claim brought against a corporation for the actions of its directors is unsettled in North Carolina."); *Bell v. Kaplan*, 2016 U.S. Dist. LEXIS 24408, *14–15 (W.D.N.C. Feb. 29, 2016) ("North Carolina has never recognized this cause of action."); *Veer Right Mgmt. Grp., Inc. v. Czarnowski Display Serv.*, 2015 NCBC LEXIS 13, *6–7 (N.C. Super. Ct. 2015) ("[W]hether North Carolina recognizes a claim for aiding and abetting a breach of fiduciary duty remains an open question."); *Laws v. Priority Tr. Servs. of N.C., LLC*, 610 F. Supp. 2d 528, 532 (W.D.N.C. 2009) (dismissing claim for aiding and abetting breach of fiduciary duty because "no such cause of action exists in North Carolina"), while Nevada has recognized this claim. *See Kahn v. Dodds* (*In re AMERCO Derivative Litig.*), 127 Nev. 196, 225, 252 P.3d 681, 701–02 (2011).

17. Plaintiff contends that the claim for aiding and abetting is governed by the "internal affairs doctrine," and because Islet is a Nevada corporation, Nevada law applies, citing *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680, 657 S.E.2d 55, 63 (2008). (Pl.'s Mem. Opp. Mot. Dismiss 15–17.) Plaintiff argues that since its claims for breach of fiduciary duty against Green and Wilkison are governed by Nevada law, Nevada law must be applied because its "claim for aiding and abetting breach of fiduciary duty is rooted in Green and Wilkison's breaches of their fiduciary duties to Islet. . . ." (*Id.* at 16.) Plaintiff cites primarily to cases from other jurisdictions in support of its position.

18.     BHV contends that the internal affairs doctrine does not compel the application of Nevada law, and that North Carolina law applies to the claim for aiding and abetting. (BHV's Reply Supp. Mot. Dismiss 2–6.) BHV argues that "aiding and abetting breach of fiduciary duty is a separate tort which, under our state's law, is not automatically governed by the law of the state of incorporation. That is especially true where, as here, the alleged aider and abetter is an outsider to Islet who is not alleged to have breached any fiduciary duties owed to Islet." (*Id.* at 2.) BHV also cites to *Bluebird*, quoting the relevant holding from that case as follows:

> The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs— matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.

188 N.C. App. at 680, 657 S.E.2d at 63 (quoting *Edgar v. MITE Corp.* 457 U.S. 624, 645 (1982)). BHV contends that applying "the internal affairs doctrine to the alleged tortious conduct of outsiders like BHV . . . ignores the very purpose of the doctrine." (BHV's Reply Supp. Mot. Dismiss 5.)

19.     BHV also relies on the recent opinion issued by the Honorable Graham Mullen in *Bell v. Kaplan, supra,* involving the same issue with which this Court is faced—a claim of aiding and abetting breach of fiduciary duty brought by a Nevada corporation against a third-party. In *Bell*, the Court held:

> Kaplan next argues that the Receiver's claim for aiding and abetting breach of fiduciary duty must be dismissed because North Carolina does not recognize such a cause of action. It appears that the Defendant is correct that North Carolina has never recognized this

cause of action. The Receiver contends, however, that Nevada law applies to the Receiver's claim because RVG was incorporated in Nevada and the claim involves the "internal affairs" of RVG. "Under North Carolina law, the substantive law of a corporation's state of incorporation governs suits involving '[the] corporation's internal affairs—*matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders . . . .*'" Mr. Kaplan is neither an officer, director, nor shareholder of RVG. Therefore, this claim does not invoke the internal affairs doctrine and Nevada law is inapplicable. As North Carolina does not recognize this claim, it must be dismissed.

2016 U.S. Dist. LEXIS 24408 at *14–15 (citations omitted).

20. The Court has carefully reviewed all of the authority cited by both parties in support of their respective positions and concludes that the internal affairs doctrine should not be applied to the aiding and abetting claim under the facts of the present case. The doctrine's primary purpose is to minimize the potential for corporations to be subjected to the "conflicting" standards of different state's laws with regard to matters of internal corporate governance and the relationships between and among shareholders, officers, and directors. *Bluebird*, 188 N.C. App. at 680, 657 S.E.2d at 63 ("States normally look to the State of a business' incorporation for the law that provides the relevant corporate governance general standard of care," quoting *Atherton v. F.D.I.C.*, 519 U.S. 213, 224 (1997)); *see also Mancinelli v. Momentum Research, Inc.*, 2012 NCBC LEXIS 30, *4–8 (N.C. Super. Ct. 2012) ("The need for the inner workings of a corporation to be governed by a single body of laws has been frequently emphasized by state and federal courts alike. The internal affairs doctrine 'serves the vital need for a single, constant and equal law to avoid the

fragmentation of continuing, interdependent internal relationships.'") (citations omitted).

21.     The Restatement (Second) of Conflict of Laws offers the following examples of the types of conduct encompassed by the internal affairs doctrine:

> [S]teps taken in the course of the original incorporation, the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares, preemptive rights, the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, shareholders' rights to examine corporate records, charter and by-law amendments, mergers, consolidations and reorganizations and the reclassification of shares.

*Restatement (Second) of Conflict of Laws* § 302 cmt. a (Am. Law. Inst. 1988).

22.     While a standard of fiduciary responsibility expected of officers and directors of a corporation generally should be the subject of uniform regulation by the state of incorporation, the same concerns do not necessarily apply to the conduct of third-party corporate outsiders that may lead to tort liability for aiding and abetting. Such third-party conduct does not implicate the standard to which a director or officer should be held; that standard is best left to determination by the state of incorporation. As one court that considered the application of the internal affairs doctrine to an aiding and abetting claims aptly held:

> [T]here are no compelling reasons to apply the "internal affairs" doctrine here, since the claims do not involve "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." Here determination of the aiding and abetting issues does not involve a determination as to the nature or extent of the fiduciary duties that were owed by the Rigases or other Adelphia management, or the extent

to which fiduciary duties were breached. There is no risk that different courts might reach different conclusions as to the applicable standards for appropriate officer or director conduct, or as to claims for failure to satisfy these standards. This case instead involves basic principles of tort secondary liability, as established in the current *Restatement* (which applies to many different types of torts), and which principles are applicable to alleged aiding and abetting of *many types of* primary violations of duty—of which a breach by a corporate officer or director is only one.

*Adelphia Communs. Corp. v. Bank of Am., N.A. (In re Adelphia Communs. Corp.)*, 365 B.R. 24, 41 (Bankr. S.D.N.Y. 2007) (citations omitted).

23. The Court concludes that under the facts present in this case, there is no compelling reason that the internal affairs doctrine must be applied to the claim for aiding and abetting breach of fiduciary duty. Rather, North Carolina's choice of law principles applicable to claims affecting the substantial rights of the parties, such as torts, should be applied to the aiding and abetting claim. *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 692, 698 S.E.2d 719, 722–723 (2010) ("Our traditional conflict of laws rule is that matters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim . . . . For actions sounding in tort, the state where the injury occurred is considered the situs of the claim," *quoting Boudreau v. Baughman,* 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988)); *Camacho v. McCallum*, 2016 NCBC LEXIS 81, *17 (N.C. Super. Ct. 2016) ("The place of the injury is the state where the injury or harm was sustained or suffered—the state where the last event necessary to make the actor liable or the last

event required to constitute the tort takes place, and the substantive law of that state applies.").

24.     Neither party has addressed the application of North Carolina's lex loci principles to the facts underlying the claim for aiding and abetting. Nevertheless, the allegations in the First Amended Complaint and Plaintiff's arguments regarding the nature of BHV's assistance in the breaches of fiduciary duty point to North Carolina as the "situs of the claim." First, Plaintiff maintains its principal place of business in North Carolina. (Am. Compl. ¶ 6.) Although North Carolina has not adopted a "bright line" rule that a corporation necessarily sustains economic injury in the state in which its principal place of business is located, the Court of Appeals has recognized that "[t]he location of a plaintiff's residence or place of business may be useful for determining the place of a plaintiff's injury in those rare cases where, even after a rigorous analysis, the place of injury is difficult or impossible to discern." *Harco Nat'l Ins. Co.*, 206 N.C. App. at 697, 698 S.E.2d at 726.

25.     BHV also has its principal place of business in North Carolina, and Green and Wilkison are residents of North Carolina. Plaintiff contends that BHV aided and abetted the breach of fiduciary duty by being "the vehicle by which Green and Wilkison accomplished their self-dealing and which was the primary beneficiary of their wrongful conduct." (Pl.'s Mem. Opp. Mot. Dismiss 19.) Plaintiff further contends that "[a]s sole owners and officers of BHV, BHV acts and operates through

Green and Wilkison."[2] (*Id.*) Plaintiff has not alleged any actions taken by other directors or corporate officials of BHV. These allegations would indicate that BHV's alleged "aiding and abetting," apparently limited to Green and Wilkison acting on BHV's behalf, took place in North Carolina.

26.     Absent allegations or information pointing to the applicability of the law of another state, the Court will apply North Carolina law to the claim for aiding and abetting.

27.     As noted *supra*, North Carolina's appellate courts have not, to-date, expressly recognized a cause of action for aiding and abetting breach of fiduciary duty, and the existence such claim is, at best for Plaintiff, "unsettled." *Corwin*, 2016 N.C. App. LEXIS 1320 at *42–43. Nevertheless, even if such a claim should be recognized in North Carolina, the Court of Appeals has held that the claim requires facts supporting an allegation of "substantial assistance by the aider and abettor in the achievement of the primary violation." *Bottom v. Bailey*, 238 N.C. App. 202, 212, 767 S.E.2d 883, 889 (2014) (*citing Blow v. Shaughnessy*, 88 N.C. App. 484, 490, 364 S.E.2d 444, 447 (1988)). Mere "conclusory allegations" that the abettor "was aware of Bailey's fraudulent acts and rendered substantial assistance" are not sufficient. *Id*. In this case, Plaintiff has not alleged any specific assistance, let alone substantial assistance, provided to Green and Wilkison by BHV. In other words, Plaintiff has failed allege sufficient facts to support the claim that BHV aided and abetted Green

---

[2] Plaintiff has not alleged where any of the specific conduct in the Amended Complaint occurred, except for Green and Wilkison's meeting with Schoninger in New York in February, 2014.

and Wilkison in breaching their fiduciary duties. BHV's motion to dismiss Plaintiff's claim for aiding and abetting breach fiduciary duty should be GRANTED.

a. *Unjust Enrichment.*[3]

28. As a Sixth Cause of Action, Plaintiff alleges that "BHV, Green, and Wilkison unjustly enriched themselves by negotiating agreements, purportedly on behalf of Islet, that served to benefit the Defendants' personal pecuniary interests" and "resulted in substantial benefits to [ ] BHV, Green, and Wilkison." (Am. Compl. ¶¶ 120–21.) In the Amended Complaint, Plaintiff does not specifically allege the benefits to BHV, Green, and Wilkison received except for "the continued research and marketing of Remo." (*Id.* ¶ 121.)

29. A claim for unjust enrichment "is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). "The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefor." *Atlantic C. L. R. Co. v. State Highway Comm'n*, 268 N.C. 92, 95–96, 150 S.E.2d 70, 73 (1966). In North Carolina, to recover on a claim of unjust enrichment, Plaintiff must prove: (1) that it conferred a benefit on another party; (2) that the other party consciously accepted the benefit; and (3) that the

---

[3] Plaintiff has cited to both North Carolina and Nevada law in support of its argument that it has adequately pleaded a claim for unjust enrichment. (Pl.'s Mem. Opp. Mot. Dismiss 20–21.) Nevada's law regarding unjust enrichment appears to be essentially the same as North Carolina's law. *LeasePartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 113 Nev. 747, 755, 942 P.2d 182, 187 (1997). The Court will apply North Carolina law to this claim.

benefit was not conferred gratuitously or by an interference in the affairs of the other party. *Southeastern Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002). "The doctrine of unjust enrichment was devised by equity to exact the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated." *Collins v. Davis*, 68 N.C. App. 588, 591, 315 S.E.2d 759, 761 (1984).

30. In its Memorandum, Plaintiff contends that the claim for unjust enrichment is based on Green's and Wilkison's "self-dealing" in negotiating certain agreements between Islet and BHV that unfairly benefitted BHV at the expense of Islet, and in diverting certain benefits from Islet to BHV. (Pl.'s Mem. Opp. Mot. Dismiss 20–21.) As best the Court can determine, Plaintiff claims the following actions are the basis of the unjust enrichment claim:

    a. Green negotiated a reduction of approximately $40 million in the milestone payments owed by Kissei to BHV. Plaintiff alleges that the reduction should have been for the benefit of Islet, but resulted only in a benefit to BHV. (Am. Compl. ¶¶ 23–25.)

    b. Green and Wilkison negotiated both sides of the merger termination agreement between Islet and BHV and shifted all expenses related to the termination to Islet, benefitting BHV. (*Id.* ¶¶ 55–56.)

    c. Green and Wilkison diverted to BHV "some or all" of the funds from Schoninger that were supposed to be for Islet. (*Id.* ¶¶ 33–34.)

d. Green and Wilkison committed Islet to a $200,000 loan from Chicago Ventures but diverted the $200,000 in loan proceeds to BHV. (*Id.* ¶¶ 65–67.)

e. "Green and Wilkison failed to pursue valuable Islet assets in favor of pursuing Remo for the benefit of themselves and for BHV on behalf of Islet, that served to benefit the Defendants' personal pecuniary interests." (*Id.* ¶ 49.)

31. Plaintiff's allegations underlying the unjust enrichment claim appear to be nothing more than an attempt to repackage a number of Plaintiff's claims against Green and Wilkison. In fact, Plaintiff's argument in response to Green and Wilkison's Motion to Dismiss makes it clear that the unjust enrichment claim is co-extensive with its claims against Green and Wilkison for breach of fiduciary duty and constructive fraud. (Pl.'s Mem. Opp. Green and Wilkison's Mot. Dismiss 11–15.) To the extent Plaintiff alleges that Green and Wilkison negotiated both sides of agreements between Islet and BHV, or diverted funds and opportunities from Islet to BHV, Plaintiff has made the same allegations against Green and Wilkison for breach of fiduciary duty and self-dealing, and constructive fraud, and has remedies available under those claims. Plaintiff has not alleged or otherwise explained how any of the facts alleged support an allegation that Islet, as opposed to Green and Wilkison, conferred a benefit on BHV, or how any benefits received by BHV, Green, or Wilkison resulted from and implied contract. There are simply no grounds under the allegations present in this action that would support a claim for unjust enrichment.

BHV's motion to dismiss Plaintiff's claim for unjust enrichment should be GRANTED.

b. *Constructive Trust.*

32. As a Seventh Cause of Action, Plaintiff has requested that the Court impose a constructive trust "with respect to any transfer of funds, assets, benefits, corporate opportunities, or property from Plaintiff, as well as any benefits received by Defendants in the past or on a going forward basis. . . ." (Am. Compl. ¶ 127.)

33. A constructive trust is an equitable remedy. "Courts of equity will impose a constructive trust to prevent the unjust enrichment of the holder of the legal title to property acquired through a breach of duty, fraud, or other circumstances which make it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." *Cline v. Cline*, 297 N.C. 336, 343–44, 255 S.E.2d 399, 404 (1979). "[A] constructive trust ordinarily arises out of the existence of fraud, actual or presumptive—usually involving the violation of a confidential or fiduciary relation— in view of which equity transfers the beneficial title to some person other than the holder of the legal title." *Leatherman v. Leatherman*, 297 N.C. 618, 621–22, 256 S.E.2d 793, 795–96 (1979), *superseded by statute on other grounds* (quoting *Bowen v. Darden*, 241 N.C. 11, 13–14, 84 S.E.2d 289, 292 (1954)). A constructive trust "arises purely by construction of equity independently of any contract or of any actual or presumed intention of the parties to create a trust. . . ." *Teachey v. Gurley*, 214 N.C. 288, 292, 199 S.E. 83, 87 (1938).

34.     The Court has denied the motions to dismiss Plaintiff's claims for breach of fiduciary duty and constructive fraud against Green and Wilkison and the remedy of a constructive trust remains available to Plaintiff at this stage of the action. Some of the assets over which Plaintiff seeks a constructive trust may currently be held by BHV. Accordingly, Defendant BHV's Motion to Dismiss Plaintiff's claim for constructive trust should be DENIED.

35.     THEREFORE, IT IS ORDERED that Defendant BHV's Motion to Dismiss is GRANTED, in part, and DENIED in part as follows:

36.     Defendant's Motion to Dismiss Plaintiff's claim for aiding and abetting breach of fiduciary duty (Second Cause of Action) is GRANTED.

37.     Defendant's Motion to Dismiss Plaintiff's claim for unjust enrichment (Sixth Cause of Action) is GRANTED.

38.     Defendant's Motion to Dismiss Plaintiff's claim for constructive trust (Seventh Cause of Action) is DENIED.

39.     Except as expressly granted above, Defendant's Motion to Dismiss is DENIED.

This the 12th day of January, 2017.


/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
   for Complex Business Cases